UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                         :

Y.S., individually and on behalf of S.F., a child with a    :
disability,                                                 :
                                                 :

                         Plaintiff,            :               23 Civ. 7317 (JPC)
                                                   :
                -v-                           :             OPINION AND ORDER
                                                   :

NEW YORK CITY DEPARTMENT OF EDUCATION,   :
                                                 :
                       Defendant.       :
                                                 :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff Y.S., individually and on behalf of her minor daughter, S.F., brings this action

against the New York City Department of Education ("DOE") under the Individuals with

Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* ("IDEA"), seeking review of an

administrative decision issued on April 20, 2023, by a New York State Review Officer ("SRO").

In that decision, the SRO—in addition to finding that certain of Y.S.'s claims were not properly

before him, including Y.S.'s claims related to her request for independent educational evaluations

("IEEs") and for compensatory bilingual speech-language therapy ("SLT") services—concluded

that S.F. had not been denied a free appropriate public education ("FAPE") from May 16, 2020,

through April 2021, but had been denied a FAPE from May 4, 2021, through December 31, 2021.

As relief for the FAPE denial for that latter period, the SRO awarded S.F. 15.5 hours of

compensatory physical therapy services and 150 hours of one-on-one compensatory tutoring.

      The parties have cross-moved for summary judgment. Y.S. seeks reversal of the

unfavorable portions of the SRO's decision—namely, the determinations that S.F. had not been

denied a FAPE from May 16, 2020, through April 2021, that Y.S.'s claim for bilingual SLT services was time-barred, and that her claim related to her request for IEEs fell outside the SRO's purview. Y.S. also insists that the SRO should have awarded 600 hours of compensatory tutoring, and further requests 276 hours of compensatory bilingual SLT services. The DOE seeks affirmance of the SRO's decision.

Because the Court finds that the SRO erred in excluding Y.S.'s claim as to her request for IEEs and further that this exclusion may bear on the question of whether S.F. was denied a FAPE from October 8, 2020, through April 2021, the Court remands these issues to the SRO for consideration consistent with this Opinion and Order. In all other respects, the Court grants summary judgment in favor of the DOE and denies summary judgment as to Y.S.

## I. Background

### A. Overview of the IDEA

Congress enacted the IDEA with the purpose of "ensur[ing] that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). To achieve this end, the IDEA requires state or local education agencies to provide each student with a disability an individualized education program ("IEP") specifying the student's educational needs. *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 448 (2d Cir. 2015) (quoting *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 368 (1985)). New York law charges local Committees on Special Education ("CSE") with developing an IEP for a child with a disability. N.Y. Educ. Law § 4402(1)(b)(1); *see also R.E. ex rel. J.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012). The CSE must consist of, among others, the student's parents, the student's regular or

special education teacher, a school psychologist, and a district representative "qualified to provide or administer or supervise special education and . . . knowledgeable about the general curriculum and the availability of resources of the school district." N.Y. Educ. Law § 4402(1)(b)(1)(a). Although the IEP need not "provide[] everything that might be thought desirable by loving parents," *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 127 (2d Cir. 1998) (internal quotation marks omitted), it must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances," *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017).

"A child's IEP is based in significant part on the results of statutorily mandated evaluations of the child." *D.S. ex rel. M.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152, 157 (2d Cir. 2020) (citing 20 U.S.C. § 1414(b)(2)(A)(ii), (c)(1)-(2), (d)(3)(A), (d)(4)(A)). First, a child suspected of having a disability must receive a "full and individual initial evaluation" to determine the existence and extent of any disability and whether the child is, as a result, entitled to special education and related services under the IDEA. 20 U.S.C. § 1414(a)(1). Then, a child is entitled to a reevaluation at least once every three years (referred to as a triennial reevaluation) for the purpose of updating the IEP. *Id.* § 1414(a)(2), (d)(4)(a).

"Congress repeatedly emphasized throughout the Act the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness." *Honig v. Doe*, 484 U.S. 305, 311 (1988) (citing 20 U.S.C. §§ 1400(c), 1401(19), 1412(7), 1415(b)(1)(A), (C), (D), (E), 1415(b)(2)). Accordingly, "the Act establishes various procedural safeguards that guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Id.* at 312; *see* 20 U.S.C. § 1415(a) (requiring state

education agencies to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE]").

As one such safeguard, the parent of a child with a disability has an absolute right to obtain at their own expense an IEE of the child, 34 C.F.R. § 300.502(a)(1), and the school must consider the results of that IEE "in any decision made with respect to the provision of FAPE to the child," *id.* § 300.502(c)(1). An IEE is defined in the IDEA's implementing regulations as "an evaluation conducted by a qualified examiner who is not employed by the public agency responsible for the education of the child in question." *Id.* § 300.502(a)(3)(i). The parent also may request an IEE at public expense if the parent disagrees with an evaluation obtained by the school district. *Id.* § 300.502(b)(1). Upon receiving such a request, the school district must, "without unnecessary delay," either comply with the parent's request or file a due process complaint requesting a hearing to show that its own evaluation is appropriate. *Id.* § 300.502(b)(2).

As another safeguard, parents in New York may challenge the adequacy of their child's IEP in a due process hearing before an impartial hearing officer ("IHO"). N.Y. Educ. Law § 4404(1). If dissatisfied with the IHO's decision, either party may appeal that decision to an SRO, whose decision is final and concludes the state administrative review; if still dissatisfied at that juncture, either party may then bring a civil action in federal or state court. *Id.* § 4404(2); 20 U.S.C. § 1415(i)(2)(A). At the administrative level, the school district bears the burden of proof and persuasion to demonstrate that the student was provided a FAPE. N.Y. Educ. Law § 4404(1)(c). "On appeal to a federal court, however, the burden of demonstrating that an SRO ruled incorrectly falls on the party challenging that decision." *R.G. ex rel. E.G. v. N.Y.C. Dep't of*

*Educ.*, 585 F. Supp. 3d 524, 535 (S.D.N.Y. 2022); *accord M.H. ex rel. P.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 225 n.3 (2d Cir. 2012).

**B.    Facts[1]**

Y.S. is the mother of S.F., a bilingual, eleven-year-old girl, who has been classified by the DOE since 2018 as a student with autism.  Pl. 56.1 Stmt. ¶¶ 2, 4; *see also* Dkt. 18-2 at 6-11 (1/26/2018 psychoeducational evaluation report).  S.F. was in preschool between 2016 and 2018, in kindergarten for the 2018-2019 school year, first grade for the 2019-2020 school year, and second grade for the 2020-2021 school year.  Pl. 56.1 Stmt. ¶ 11 (detailing S.F.'s academic timeline).

On January 26, 2018, the DOE administered an initial psychoeducational evaluation to determine S.F.'s eligibility for special education services.  Dkt. 18-2 at 6-11 (1/26/2018 psychoeducational evaluation report).  While the assessment was meant to be delivered in Spanish, the evaluator observed that S.F. was "unable to recognize letters, numbers, colors, and shapes in Spanish" and was "present with greater English language skills." *Id.* at 8.  As a result, the evaluator delivered the assessment in English. *Id*. at 8-10.

An initial CSE meeting convened on April 25, 2018, to develop S.F.'s IEP for the 2018-2019 school year. *See* Dkt. 18-1 at 144-156 (4/25/2018 IEP).  The April 2018 IEP recommended a 12:1+1 special class placement (that is, one with no more than twelve students, one teacher, and

---

[1] The following background facts are drawn primarily from the underlying administrative record, which was filed under seal on January 29, 2024, Dkts. 18-1, 18-2, 18-3, 18-4, and from Y.S.'s Local Civil Rule 56.1(a) statement of undisputed material facts, Dkt. 20, ("Pl. 56.1 Stmt."), to the extent that the factual assertions contained therein are not disputed in the DOE's Rule 56.1(b) counterstatement, Dkt. 26-1 ("Deft. 56.1 Counter Stmt.").  Citations to the administrative record reflect the Electronic Case Filing pagination.

one paraprofessional) in a district specialized school[2] and related services for occupational therapy ("OT"), physical therapy ("PT"), and SLT, with all services to be administered in English.  *Id.* at 149-150.

In a letter sent to the principal of S.F.'s school on February 5, 2019, Y.S. expressed her disagreement with the results of the DOE's psychoeducational evaluation, noting, among other issues, that it was conducted in English and insisting that S.F. was a "Spanish-dominant" student. Dkt. 18-2 at 40.  She thus requested that the DOE authorize and fund an independent bilingual neuropsychological evaluation, an independent bilingual functional behavioral assessment ("FBA"), and, if warranted by the FBA, a behavioral intervention plan with Spanish translation prepared by a board-certified behavior analyst ("BCBA").  *Id.* at 41.

In April 2019, the DOE conducted a classroom observation of S.F., as well as bilingual SLT, PT, and OT evaluations.  *See* Dkt. 18-1 at 244-248 (PT evaluation conducted on 4/12/2019), 249-264 (bilingual SLT evaluations conducted on 4/5/2019, 4/8/2019, and 4/9/2019), 265-267 (classroom observation conducted on 4/8/2019), 268-269 (portion of OT evaluation conducted on 4/5/2019); Dkt. 18-2 at 1-5 (remainder of OT evaluation conducted on 4/5/2019).  The speech-language pathologist who conducted S.F.'s bilingual speech-language assessment observed that although S.F. was bilingual in English and Spanish, "[S.F's] dominance appear[ed] to be shifting to English when responding."  Dkt. 18-1 at 250; *see also id.* at 254-255 (S.F.'s recorded dialogue with the evaluator indicating that S.F. preferred to respond in English even when the evaluator was communicating in Spanish).  The PT evaluator recommended no further physical therapy services,

---

[2] Descriptions of the various special education placements in New York's district schools are provided on the DOE's public website.  *See* NYC Pub. Schools, *District 75*, https://www.schools.nyc.gov/learning/special-education/school-settings/district-75 (last visited Sept. 29, 2024) (describing 12:1:1 special classes).

finding that S.F. was "participating within the range typical of [her] peers." *Id.* at 248.  The OT evaluator continued to recommend OT services. Dkt. 18-2 at 4.

The next month, the DOE administered an FBA, *see* Dkt. 18-1 at 237-243 (FBA conducted on 5/6/2019), pursuant to which the FBA team concluded that S.F. "has the ability to perform and . . . does not exhibit a skill-based or performance-based deficit in her current educational setting," *id*. at 240.  The FBA team further observed that S.F. "presents as notably higher functioning than her peers" in her setting.  *Id.*  In a letter dated May 21, 2019, Y.S. once again voiced her disagreement with these evaluations.  *See id.* at 28.

On February 2, 2020, an IHO issued a final decision arising from an earlier due process proceeding (in connection with a due process complaint that Y.S. had filed on May 24, 2019, alleging that S.F. had been denied a FAPE in the 2016-2017, 2017-2018, and 2018-2019 school years), ordering the DOE to fund various IEEs, including an independent bilingual neuropsychological evaluation, an independent bilingual FBA conducted by a BCBA, an independent PT evaluation, and an independent bilingual SLT evaluation of S.F (the "February 2, 2020 Order").  *See id.* at 25-32 (final order in Case Number 183233); *see also* 8 N.Y.C.R.R. § 200.5(g)(1)(iv) (New York regulation requiring the DOE, upon receipt of a parent's request for an IEE, to "either ensure an independent educational evaluation is provided at public expense or file a due process complaint notice to request a hearing").  This order was not transmitted to Y.S. until June 26, 2020.  *See* Dkt. 18-1 at 23 (the state's determination that although the New York City IHO had failed to timely transmit the decision, "no further action [was] required as the final decision and orders [had] been transmitted to the parties").

On April 29, 2020, in light of school closures during the COVID-19 pandemic, the DOE issued a special education remote learning plan for S.F.  *Id.* at 142.  That plan included one thirty-

minute session of counseling per week, one thirty-minute session of SLT per week, and one thirty-minute session of OT per week, with all services again to be delivered in English. *Id.*

Over four days in July 2020, S.F. underwent an independent neuropsychological evaluation. *See id.* at 218-236 (9/18/2020 evaluation report). Psychologist Jennifer Hope, Ph.D., conducted the evaluation through videoconferencing due to pandemic-related constraints. *Id.* at 218. In a report issued on September 18, 2020, Dr. Hope concluded that S.F. had "failed to make adequate progress in her current educational program, which does not provide an adequate degree of either individual attention or specialized instructions for students with [autism spectrum disorder] and language disorders, as well as impairments in attentional and executive functions." *Id.* at 234. She thus recommended, among other services and accommodations, that S.F. be provided with clinical and special educational services on a twelve-month basis, one-on-one instruction with a paraprofessional, and ongoing OT, SLT, and PT services. *Id.* at 234-235.[3]

On September 28, 2020, Yasmin Silva, a speech-language pathologist, conducted an independent bilingual speech and language evaluation of S.F. at S.F.'s home. *Id.* at 206. Ms. Silva "strongly recommended" that S.F. receive bilingual SLT for three hours per week on an ongoing basis, as well as compensatory services "in the form of a bank of 276 speech and language therapy

---

[3] The evaluation report states: "Ongoing OT and PT services are recommended, *as indicated by most recent independent evaluators*." Dkt. 18-1 at 235, ¶ 6 (emphasis added). But it is unclear to what independent PT evaluation Dr. Hope was referring, as the list of "records reviewed" provided in the report fails to mention an independent PT evaluation. *Id.* at 219-220. And while that list indicates that Dr. Hope reviewed the DOE-administered PT evaluation of S.F. conducted on April 12, 2019, that evaluator declined to recommend continued PT services. *Id.* at 248. It is also unclear whether S.F. was receiving PT services during this remote instruction period, given that S.F.'s April 29, 2020 remote learning plan did not mandate such services. *Id.* at 142. And of relatively minor note, Dr. Hope's report, which is dated September 18, 2020, also indicates that the "9/28/2020, Bilingual Speech and Language Evaluation" was reviewed in preparation of the report. *Id.* at 219.

hours (3 hours a week for 46 weeks for 2 years)" to address S.F.'s specific language deficits. *Id.* at 214.

On October 8, 2020, the CSE convened to review S.F.'s progress and develop her IEP for the 2020-2021 school year. *Id.* at 140. The IEP indicated that Y.S. declined to participate in that meeting. *See id.* ("Parent refused to participate in EPC held on 10/1/2020, then rescheduled for 10/8/2020 to allow mother another opportunity to participate."). Y.S. maintains that she requested more time to prepare for the meeting and that the DOE "refus[ed] to reschedule for a time that Y.S. would not be caught off-guard and that more than the [bilingual ]SLT evaluation would be available." Pl. 56.1 Stmt. ¶¶ 27-29. Continuing in Y.S.'s absence, the CSE recommended a twelve-month school year program delivered in English, consisting of a 12:1+1 special placement in a non-specialized district community school with related services to include one thirty-minute session of group counseling per week, two thirty-minute sessions of group OT per week, one thirty-minute session of group SLT per week in the classroom, one thirty-minute session of group SLT per week in the therapy room, and one thirty-minute session of parent counseling and training per month. Dkt. 18-1 at 132-133. The October 2020 IEP also indicated S.F.'s need for assistive technology devices and/or services, *id.* at 122, although it did not include any specific recommendation for such devices or services, *id.* at 134.

On February 19, 2021, independent PT and OT evaluations of S.F. were conducted. *See id.* at 187-192 (independent PT evaluation report), 193-199 (independent OT evaluation report). The PT evaluator recommended twice-weekly forty-five-minute PT sessions in a one-on-one setting. *Id.* at 191. The OT evaluator recommended four thirty-minute OT sessions per week. *Id.* at 197. Just over a month later, on March 22, 2021, the DOE completed a psychological update for S.F. as part of her triennial reevaluation. *Id.* at 200-203 (report dated 4/6/2021).

On April 19, 2021, the CSE convened to develop S.F.'s IEP for the 2021-2022 school year. *Id.* at 108.[4] The April 2021 IEP, which had an implementation date of May 4, 2021, recommended a twelve-month program consisting of a 12:1+1 special class placement in a state-approved nonpublic school, one thirty-minute session of group counseling per week, two thirty-minute sessions of individual OT per week in the therapy room, two thirty-minute sessions of individual OT per week in the student's classroom, two thirty-minute sessions of individual PT per week, three sixty-minute sessions of SLT per week, and one thirty-minute session of parent counseling and training per month—with all services to be delivered in English, except for the SLT services, which were to be delivered in Spanish. *Id.* at 82, 103-104.[5]

According to the meeting notes in the April 2021 IEP, Y.S. agreed to the two thirty-minute sessions of individual OT services in the therapy room and two thirty-minute sessions per week of individual OT services in the classroom. *Id.* at 90. The IEP further notes that Y.S. "agreed to continue PT service twice per week individually for 30 minutes," notwithstanding the independent PT evaluator's recommendation of twice weekly forty-five-minute sessions of PT. *Id.* at 91-92. Lastly, the IEP documented the team's diverging perspectives on whether S.F. needed bilingual SLT services, with Y.S. insisting on such services. *Id.* at 87. As documented in the IEP, Y.S.'s concerns were "discussed with the team and it was decided that [S.F.]'s speech and language mandate [would] be changed from one small group per week for 30 minutes in English and one classroom group per week for 30 minutes in English to three times per week individually for 60 minutes in Spanish." *Id.*

---

[4] As indicated in the April 2021 IEP, S.F. was at this time still learning remotely, Dkt. 18-1 at 84, and was expected to return to in-person learning in October 2021, *id.* at 92.

[5] At the impartial hearing, the DOE speech pathologist testified that where the "language of service" in an IEP identifies a language other than English (in this case, Spanish), "it's a bilingual service." Dkt. 18-3 at 107-108 (transcript of impartial hearing).

Meanwhile, over three dates in April 2021, a BCBA conducted an independent FBA of S.F., *id.* at 157-168 (FBA report), and found that a behavior intervention plan was not recommended at the time, given that S.F.'s "problem behaviors" "did not occur frequently nor did they occur long enough to interfere with [S.F.]'s availability for learning and skill acquisition," *id.* at 168. The CSE reconvened on June 23, 2021, to review that independent FBA, and made no changes to its recommendations, except that it modified the PT mandate to three thirty-minute sessions per week, pursuant to Y.S.'s request. *Id.* at 74-75. The CSE declined Y.S.'s request for paraprofessional support for S.F. during recess, finding that the PT and OT services adequately addressed Y.S.'s concerns for S.F.'s safety. *Id.* at 80.

S.F. remained in her district school for the first part of the 2021-2022 school year but began attending a private school in January 2022, pursuant to a stipulation in which the Y.S. and the DOE agreed that as of December 9, 2021, the April 2021 IEP had not been implemented and in which the DOE agreed to fund three hours of bilingual SLT weekly at a rate not to exceed $180 per hour as well as S.F.'s tuition at that private placement for the 2021-2022 school year. *See* Dkt. 18-2 at 26-33. That stipulation was approved on December 9, 2021, by the undersigned in the related case, *Y.S. v. New York City Department of Education*, No. 21 Civ. 5878 (JPC) (S.D.N.Y.) ("Related Matter"). *See* Related Matter, Dkt. 41. Under the express terms of the stipulation, Y.S. did not "release claims that she may have concerning alleged denial(s) of FAPE preceding [S.F.]'s first day of enrollment" at S.F.'s private placement. *Id.* at 4.

## C.    Administrative Proceedings

### 1.    Due Process Complaint and Impartial Hearing

On May 16, 2022, Y.S. filed a due process complaint notice, alleging that the DOE had failed to provide S.F. with a FAPE from May 16, 2020, through December 31, 2021—a period spanning the 2019-2020, 2020-2021, and 2021-2022 school years. Dkt. 18-1 at 1-9.

Specifically, Y.S. alleged that the DOE failed to have an IEP in place from May 16, 2020, to October 8, 2020, *id.* at 2; the DOE impeded S.F.'s comprehensive evaluation by failing to timely transmit the February 2020 IHO decision from Case Number 183233, and thereby impeded S.F.'s right to a FAPE and Y.S.'s right to meaningfully participate in the development of S.F.'s IEP, *id.* at 2-5; and the DOE failed to provide Y.S. with appropriate notice of the October 2020 IEP meetings, *id.* at 5. Y.S. further claimed that the DOE failed to offer S.F. a FAPE for the 2020-2021 school year because the October 2020 IEP purportedly did not reflect S.F.'s evaluations or needs, did not mandate any research-based methodology for students with autism and language disorders, did not mandate an assistive technology device despite indicating S.F.'s need for one, did not mandate PT services, and did not mandate a paraprofessional for S.F. *Id.* at 5-6. Next, she alleged that the DOE failed to offer S.F. a FAPE for the 2021-2022 school year because the April 2021 IEP failed to recommend a research-based multisensory method, teachers trained to work with students similarly situated to S.F., an individualized paraprofessional, bilingual SLT, and tutoring to make up for S.F.'s loss of education and services; because the DOE failed to justify its recommendations in the April 2021 IEP; and because the IEP failed to address the regulatory "Special Factors" for S.F.'s needs. *Id.* at 6-7. And lastly, she broadly claimed that the DOE failed to provide appropriate programs and services from May 16, 2020, through December 31, 2021, as the CSE purportedly had acknowledged in the April 2021 meeting that the DOE's programming was not addressing S.F.'s needs. *Id.* at 7. As relief, Y.S. requested a finding that the DOE denied S.F. a FAPE from May 16, 2020, to December 31, 2021, and an order requiring the DOE to provide S.F. with compensatory academic and related services "at an enhanced rate, with the appropriate nature and total hours of such to be determined following the above evaluations." *Id.* at 8.

IHO Steven Forbes conducted the impartial hearing over five days between August 1, 2022, and December 7, 2022. Dkt. 18-4 at 100. At the hearing, the DOE presented eight exhibits, all of which were admitted into the record, and five witnesses—Jessica Beach, the assistant principal; Safwat Shenouda, a DOE physical therapist; Shari Bursztyn, a DOE psychologist; Gina Lattari, a DOE speech-language pathologist; and Y.S. herself. *Id.* at 102. Y.S. presented thirty-six exhibits, all of which were admitted in the record, and seven witnesses, including Dr. Hope, a psychologist; Lirijona Bacaliu, a speech pathologist; Ms. Silva, a speech pathologist; and Emily Levy, Ed.D., the founder and director of EBL Coaching. *Id.* On January 8, 2023, IHO Forbes issued a detailed and comprehensive Findings of Fact of Decision, in which he determined that the DOE had provided S.F. with a FAPE for all three school years and denied S.F.'s requests for compensatory education and services. *Id.* at 100-120. The IHO organized his factual findings and conclusions along Y.S.'s requests for relief. *Id.*

First, IHO Forbes addressed Y.S.'s request for 15.5 hours of compensatory PT. In her affidavit, Y.S. asserted that S.F. should have received ninety minutes of PT every week starting from the April 2021 IEP meeting through the end of December 2021, but that S.F. received only sixty minutes of PT every week. *See* Dkt. 18-2 at 15. As the IHO noted, however, when the CSE reconvened in June 2021, the mandate of ninety minutes of PT per week was adopted. Dkt. 18-4 at 105. The IHO found "concerning" that Y.S., who attended the relevant IEP meetings and presumably would have known that the ninety-minute mandate was adopted in June 2021, "signed a sworn affidavit essentially contradicting this point." *Id.* at 106-107. And he noted that the circumstances "call[ed] [Y.S.]'s credibility into question to the extent that [Y.S.] requested relief based upon facts which she almost certainly knew not to be true." *Id.* at 106. Finding "no evidence in the record to suggest that [the physical therapist working with S.F. at school] . . . provided [S.F.]

with less [PT] than the IEP mandated," the IHO denied the compensatory PT request.  *Id.* at 106, 116-117.  The IHO added that Y.S. "failed to demonstrate the need for or appropriateness of this therapy" in the first place.  *Id.* at 117.

Next, IHO Forbes addressed Y.S.'s request for 276 hours of compensatory bilingual SLT. The IHO concluded that there was insufficient record evidence suggesting that S.F. needed bilingual SLT in the first instance.  *Id.* at 110.  In arriving at that determination, the IHO noted that the independent evaluation report, which was submitted by Y.S. and strongly recommended bilingual SLT for S.F., was based on an assessment conducted in September 2020, and that neither evaluator who prepared that report worked with S.F. beyond that assessment.  *Id.* at 107.  He further concluded that while Y.S.'s witness, Ms. Bacaliu—a speech-language pathologist who provided home-based speech-language services to S.F. since July 2020, including bilingual therapy since August 2021—opined that S.F. required bilingual SLT services because S.F. "needs the desire and motivation" to continue speaking Spanish at home, that aim was not the purpose of school-based SLT.  *Id.* at 110, 117-118; *see also* Dkt. 18-2 at 64-65 (Bacaliu affidavit) ¶¶ 1, 3, 6.

IHO Forbes also considered the testimony of the DOE's witness, Ms. Lattari, S.F.'s speech teacher from 2018 to 2021.  Dkt. 18-4 at 108.  Ms. Lattari testified that S.F.'s preferred language seemed to be English, that providing additional instruction to S.F. in Spanish did not seem to help S.F., and that, as a result, she did not believe that S.F. required bilingual SLT services.  *Id.*  At the April 2021 IEP meeting, while Ms. Lattari recommended the same SLT services as those included in the October 2020 IEP, the CSE team ultimately adopted the mandate for bilingual SLT services instead, ostensibly due to Y.S.'s insistence.  *Id.* at 108-109; *see also* Dkt. 18-3 at 87 (Ms. Lattari testifying that bilingual SLT services were recommended in the April 2021 IEP "exclusively to accommodate the parent's wish that the student speak more Spanish at home"); Dkt. 18-1 at 87

(notes in the April 2021 IEP indicating that Y.S. "[felt] that her daughter require[d] bilingual Spanish/English speech and language services"). Weighing the conflicting evidence before him, IHO Forbes determined that "there [was] no objective basis in the record to conclude that [S.F.] required bilingual services," and so denied Y.S.'s request for compensatory bilingual SLT. Dkt. 18-4 at 117-118.

The IHO further commented that because 138 of the 276 requested hours of compensatory bilingual SLT arose in connection with purported deficits in appropriate services during the 2018-2019 school year, that portion of the request was not properly before him and was in any event barred by the statute of limitations. *Id.* at 110. And as to the remainder of the request, which was based on the 2019-2020 school year, he noted that "it [was] questionable whether that claim [was] barred by the Statute of Limitations." *Id.* at 111.

Lastly, IHO Forbes addressed Y.S.'s request for 600 hours of compensatory tutoring services, which Dr. Levy had recommended upon assessing S.F. on July 21, 2022, and upon reviewing, among other documents, S.F.'s 2021 and 2022 IEPs. Dkt. 18-2 at 16-18 (Dr. Levy's affidavit), 24. In light of the record evidence reflecting S.F.'s academic progress (including IHO Forbes's description of Dr. Levy's determination that S.F. was performing at or fairly close to her grade level across a broad array of academic areas[6] and the district assistant principal's testimony that S.F. was making progress as reflected by various assessments and was performing at the top of her class academically), IHO Forbes determined at the threshold that the DOE had offered S.F.

---

[6] Dr. Levy assessed S.F. on July 21, 2022, "to determine her reading, spelling, mathematics, and written expression skill levels." Dkt. 18-2 at 17 ¶ 11. IHO Forbes indicated that S.F. had just completed second grade at that time, Dkt. 18-4 at 111, but S.F.'s undisputed academic timeline places her between the third and fourth grade in Summer 2022. *See* Pl. 56.1 Stmt. ¶ 11. According to Dr. Levy, "S.F. tested at an upper first grade level for spelling and mathematics, an upper second grade level for decoding, a first grade level for writing, and a second-grade level for reading comprehension, all of which are below her expected grade levels." Dkt. 18-2 at 17 ¶ 12.

a FAPE for the subject school years and that S.F. thus was not entitled to compensatory education. Dkt. 18-4 at 111-113, 118. He further found that Dr. Levy's recommendation that S.F. receive 600 hours of compensatory education "seem[ed] to almost have been pulled from thin air," explaining that there was "no justification whatsoever set forth in Dr. Levy's affidavit as to how she arrived at this number, let alone why, or what she hoped to achieve with [S.F.] should these hours be granted." *Id.* at 118.

### 2. Appeal to the State Review Officer

Y.S. appealed from the IHO's Findings of Fact and Decision, raising thirty-two issues related to the IHO's denials of the requested relief, the IHO's various factual findings, the IHO's allocation of the burden of proof, the IHO's determination that the bilingual SLT claim was time-barred, and the IHO's credibility determinations. *See* Dkt. 18-4 at 143-153 (notice of request for review). As relief, Y.S. requested reversal of the IHO's decision, a finding that the DOE denied S.F. a FAPE from May 16, 2020, through December 31, 2021, and awards of 600 hours of compensatory tutoring at market rate, 276 hours of compensatory bilingual SLT at market rate, and 15.5 hours of compensatory PT at market rate. *Id.* at 153. On April 20, 2023, SRO Steven Krolak issued a detailed thirty-seven-page single-spaced decision sustaining the appeal in part. *See* Dkt. 18-4 at 242-278 (SRO decision).

First, SRO Krolak delineated the scope of his review. He declined to consider Y.S.'s argument that the DOE's delay in transmitting the February 2020 decision in Case Number 183233 impeded the comprehensive evaluations and thereby deprived S.F. of a FAPE, reasoning that such arguments constituted an attempt to review or enforce the IHO's decision in the earlier proceedings and so fell outside his authority. *Id.* at 254. He further noted that any recourse for that delay should have been sought in connection with the prior proceeding, not the one before him. *Id.* at 254-255. SRO Krolak also determined that Y.S. had failed to raise specific allegations concerning

the adequacy of the June 2021 IEP in her due process complaint notice and so declined to consider

the claims to that effect which Y.S. had raised the first time on appeal. *Id.* at 255. He added that

he had no need to address those claims, in any event, because he would be finding that the DOE

had failed to provide S.F. with a FAPE from May 4, 2021, until December 31, 2021 (by failing to

implement the April and June 2021 IEPs). *Id.*

Next, SRO Krolak found that certain of Y.S.'s claims were time-barred under the IDEA's

two-year statute of limitations. *Id.* at 256-258 (citing 20 U.S.C. § 1415(f)(3)(C), (b)(6)(B)). For

context, only claims premised on conduct that Y.S. "knew or should have known about" on or

after May 16, 2020, would be timely because Y.S. filed her due process complaint on May 16,

2022. *See* 20 U.S.C. § 1415(f)(3)(C). With respect to Y.S.'s claim that the DOE deprived S.F. of

a FAPE by failing to have an IEP in place from May 16, 2020,[7] to October 8, 2020, the SRO

determined that Y.S. should have known about the conduct underlying that claim by April 25,

2019, when S.F.'s April 2018 IEP had expired. Dkt. 18-4 at 257. In response to Y.S.'s argument

that a discrete violation accrued each day that S.F. lacked an IEP after April 25, 2019, the SRO

found that Y.S. "did not make this specific allegation in the due process complaint notice, which

focused on the April 2018 IEP being 'expired.'" *Id.* He thus deemed the claim untimely. *Id.* He

added that to the extent that Y.S. was challenging the adequacy of the special education services

that S.F. received through her special education remote learning plan, that claim accrued when

Y.S. received the plan on April 29, 2020, and so also fell outside the limitations period. *Id.* SRO

Krolak next determined that Y.S.'s claims related to the provision of bilingual SLT services too

were time-barred, reasoning that Y.S. was on notice that S.F. was not receiving bilingual SLT by

---

[7] As SRO Krolak noted, Y.S. appears to have chosen May 16, 2020, as the starting point because that date is two years before she filed her due process complaint notice. Dkt. 18-4 at 256 n.12.

April 29, 2020, at the latest, based on the exclusion of such services from S.F.'s remote learning plan. *Id.* at 257-258.

SRO Krolak then turned to Y.S.'s broad challenge that the IHO improperly shifted the burden of proof on the issue of a FAPE to S.F. He concluded that, although the IHO's discussion at times appeared to shift the burden of proof to the parent, "the decision when read in its entirety reveal[ed] that the IHO made his decision based on an assessment of the relative strengths and weaknesses in the evidence presented by both the district and the parent." *Id.* at 259. The SRO thus determined that reversal was not required on this basis. *Id.* In any event, the SRO remedied any misallocation of the burden of proof by "conduct[ing] an impartial and independent review of the entire hearing record and appl[ying] the correct burden of proof." *Id.*

SRO Krolak next tackled Y.S.'s various challenges to the IHO's credibility determinations. He rejected as incomprehensible Y.S.'s vague attack on the credibility of the DOE's witnesses on the grounds that their opinions were "already rejected" by a district representative present at the April and June 2021 CSE meetings. *Id.* at 260.[8] The SRO set aside Y.S.'s challenges to the DOE school psychologist's credibility, finding that the IHO had not relied on the school psychologist's testimony in making any of his findings. *Id.* at 260-261. He rejected Y.S.'s attack on the credibility of the DOE speech-language therapist, finding insufficient support for Y.S.'s accusation that the speech-language therapist was attempting occasional, minimal Spanish speech inquiries and instruction with S.F. before having the proper certification to do so. *Id.* at 261-262. In a similar vein, he found insufficient support in the record for Y.S.'s charges that the district assistant

---

[8] The entirety of Y.S.'s challenge, as raised in the notice of request for review, reads: "ISSUE 9: IHO ERRED IN EFFECTIVELY FINDING DOE'S WITNESSES CREDIBLE. DOE called witnesses who its (4/21 & 6/21) IEP meeting representative already rejected; and did not call that representative as a witness." Dkt. 18-4 at 147.

principal improperly administered and significantly inflated S.F.'s Student Annual Needs Determination Inventory ("SANDI") scores[9] and failed to present any other assessments the school utilized for S.F. *Id.* at 262. As to the DOE physical therapist, SRO Krolak acknowledged the inconsistencies in the physical therapist's testimony concerning the period when PT services were provided to S.F., but deferred to the IHO's credibility determination, given that the inconsistencies did not appear "unexplainable by confusion, mistake, or a lapse in memory." *Id.* at 262-263. The SRO also found no basis in the record to disturb the IHO's determination that Dr. Levy's recommendation of 600 hours of compensatory academic tutoring services was insufficiently justified. *Id.* at 264-265. And lastly, the SRO affirmed the IHO's adverse credibility determination of Y.S. specifically with regard to her request for 15.5 hours of compensatory PT services in her sworn affidavit; the SRO clarified, however, that any extrapolation of that finding out to the Y.S.'s other requests ran the risk of faulting Y.S. for advocating for S.F.'s interests. *Id.* at 265-266.

As to the challenges concerning the October 2020 IEP, SRO Krolak determined at the outset that only Y.S.'s claims concerning the adequacy of notice for the October 2020 CSE meeting and the October 2020's IEP failure to recommend any PT services for S.F were properly before him. *Id.* at 266-267. As to the former claim, the SRO agreed that Y.S. had been denied the opportunity to participate in the October 2020 CSE meeting but noted that Y.S. had not requested any relief in connection with this claim; and as to the latter claim, SRO Krolak concluded that the October 2020 CSE's decision to discontinue PT services was substantiated by the evaluative information available to the CSE, and, as a result, affirmed the IHO's conclusion that the

---

[9] SANDI assessments apparently are designed for children with intellectual disabilities. Pl. 56.1 Stmt. ¶ 31; *see also* Deft. 56.1 Counter Stmt. ¶ 31 (admitting that SANDI scores were used for developing S.F.'s October 2020 IEP and that S.F. was never classified as having an intellectual disability).

discontinuation of PT did not result in a denial of a FAPE for the 2020-2021 school year. *Id.* at 267-271.

Lastly, the SRO determined that the DOE had failed to meet its burden to show that it implemented S.F.'s April 2021 IEP from May 4, 2021, to December 31, 2021, and that S.F. was thus entitled to compensatory education and compensatory PT services for that period. *Id.* at 271-278. Accordingly, SRO Krolak reversed the IHO's denial of 15.5 hours of compensatory PT services, finding no evidence in the record that S.F. had received the PT services delineated in her April and June 2021 IEPs during that period. *Id.* at 277-278. He also reversed the IHO's determination that the DOE had offered S.F. a FAPE between May 4, 2021, and December 31, 2021, noting the absence of evidence in the record regarding S.F.'s progress during that period. *Id.* at 277. SRO Krolak thus awarded five hours per week of 1:1 instruction by a special education teacher for each of the thirty weeks S.F. was denied a FAPE, resulting in an award of 150 hours of 1:1 instruction by a special education teacher; the award was set to expire two years from the date of the SRO's decision. *Id.* at 277-278. The SRO affirmed the IHO's decision in all other respects. *Id.* at 278.

### D.    Procedural History of the Instant Action

On August 17, 2023, Y.S. filed the instant single-Count Complaint, seeking review of the SRO's decision. *See generally* Dkt. 1 (Complaint). In the Complaint, Y.S. requested reversal of the SRO decision, except as to its award of 15.5 hours of compensatory PT, its determination that the DOE failed to implement the April 2021 IEP from May 4, 2021, through December 31, 2021, and its conclusion that the IHO erred in failing to award any compensatory education. *Id.* at 33. Y.S. further requested a declaration that the DOE denied S.F. a FAPE from May 16, 2020, through December 31, 2021, an award of 600 hours of compensatory education at market rate, an award of

276 hours of bilingual SLT services at market rate, reasonable attorneys' fees and costs in connection with the underlying administrative actions and the instant federal action, and modification of the "SRO's expiration timeline, for services to be used within three years" of the Court's judgment.  *Id.*  On August 18, 2023, the undersigned accepted the instant case as related to an earlier filed action, *Y.S. ex rel. S.F. v. New York City Department of Education*, No. 21 Civ. 5878 (JPC) (S.D.N.Y.), which principally concerns the implementation of S.F.'s April 2019 IEP and a request for attorneys' fees arising from that litigation.  *See* Dkt. 2 (statement of relatedness); *see also* Related Matter, Dkt. 1 (complaint).

In December 2023, the parties requested to forego an initial pretrial conference and jointly proposed a summary judgment briefing schedule, which the Court adopted.  Dkts. 13, 16.  Pursuant to that schedule, Y.S. filed her motion for summary judgment on February 28, 2024.  Dkts. 20, 21 ("Pl. SJ Br."), 22.  After receiving an extension, the DOE filed its motion for summary judgment and opposition to Y.S.'s motion on April 2, 2024.  Dkts. 25, 26 ("Deft. SJ & Opp. Br.").  On May 1, 2024, Y.S. filed a reply in further support of her motion and opposition to the DOE's motion.  Dkt. 27 ("Pl. Reply & Opp. Br.").  And on May 15, 2024, the DOE filed a reply in further support of its motion.  Dkt. 28 ("Deft. Reply Br.").

## II.  Legal Standards

Although parties in an IDEA action file motions for summary judgment in form, the procedure is "in substance an appeal from an administrative determination, not a summary judgment."  *See Arlington Cent. Sch. Dist. v. D.K. & C.K.*, No. 02 Civ. 2117 (DLC), 2002 WL 31521158, at *7 (S.D.N.Y. Nov. 14, 2002) (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995)); *accord Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005).  Accordingly, the usual summary judgment standards do not apply.

*See, e.g.*, *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (per curiam); *Viola v. Arlington Cent. Sch. Dist.*, 414 F. Supp. 2d 366, 377-78 (S.D.N.Y. 2006). Instead, when reviewing IDEA administrative decisions, a federal district court considers the record and any additional evidence the parties submit and bases its determination on a preponderance of the evidence.  20 U.S.C. § 1415(i)(2)(C); *see also T.P. ex rel. S.P.*, 554 F.3d at 252.  Because the IDEA authorizes "such relief as the court determines is appropriate," 20 U.S.C. § 1415(i)(2)(C)(iii), district courts exercise "equitable authority" when crafting appropriate relief, *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 12 (1993).

Courts do not, however, have free reign in such actions.  "The role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed," and "courts must bear in mind the statutory context and the administrative judges' greater institutional competence in matters of educational policy."  *R.E. ex rel. J.E.*, 694 F.3d at 189 (internal quotation marks and brackets omitted).  Only where the challenged administrative determination implicates a pure legal question is it appropriate for the Court to conduct *de novo* review of the underlying decision.  *See Montalvan v. Banks*, No. 22 Civ. 8541 (PAE), 2023 WL 8720296, at *8 (S.D.N.Y. Dec. 18, 2023) (citing *Mrs. B. ex rel. M.M. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1122 (2d Cir. 1997) and *Lillbask*, 397 F.3d at 93-94).  Otherwise, the Court "must give due weight to [the administrative] proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy."  *M.H. ex rel. P.H.*, 685 F.3d at 240 (internal quotations marks omitted).  Indeed, while judicial review of state agency proceedings under the IDEA "requires a more critical appraisal of the agency determination than clear-error review," the standard of review "falls well short of complete *de novo* review."  *C.F. ex*

*rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (internal quotation marks omitted).

"In deciding what weight is due . . . the analysis often will hinge on the kinds of considerations that normally determine whether any particular judgment is persuasive," such as the "quality and thoroughness of the reasoning, the type of determination under review, and whether the decision is based on the administrative body's familiarity with the evidence and the witnesses." *Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 218 (2d Cir. 2014) (internal quotation marks omitted). On this score, the Second Circuit has provided the following guidance:

> By way of illustration, determinations regarding the substantive adequacy of an IEP should be afforded more weight than determinations concerning whether the IEP was developed according to the proper procedures. Decisions involving a dispute over an appropriate educational methodology should be afforded more deference than determinations concerning whether there have been objective indications of progress. Determinations grounded in thorough and logical reasoning should be provided more deference than decisions that are not.

*M.H. ex rel. P.H.*, 685 F.3d at 244 (internal citations omitted). Emphatically, the Court is "not to make subjective credibility assessments[] and cannot choose between the views of conflicting experts on controversial issues of educational policy in direct contradiction of the opinions of state administrative officers who [have] heard the same evidence." *Id.* at 240 (brackets, ellipses, and internal quotation marks omitted). Nor may the Court "'substitute [its] own notions of sound educational policy for those of the school authorities [it] review[s].'" *A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)).

In a similar vein, where, as here, the IHO and SRO have reached conflicting conclusions, "reviewing courts are not entitled to adopt the conclusions of either state reviewer according to their own policy preferences or views of the evidence; courts must defer to the reasoned

conclusions of the SRO as the final state administrative determination." *M.H. ex rel. P.H.*, 685 F.3d at 246. The Courts defers to the IHO's analysis only when considering an issue not reached by the SRO. *Id.* at 252; *accord C.F. ex rel. R.F.*, 746 F.3d at 77. Deference, however, is not warranted where the administrative officer's conclusion is "against the weight of the evidence." *R.E. ex rel. J.E.*, 694 F.3d at 194.

But "the burden of demonstrating that an SRO ruled incorrectly falls on the party challenging that decision." *R.G.*, 585 F. Supp. 3d at 535. So here, that burden rests firmly on Y.S.

### III. Discussion

In seeking reversal of the unfavorable portions of SRO Krolak's decision, Y.S. contends that: (1) the SRO erred in using restrictive, instead of minimal and fair notice, pleading standards, Pl. SJ Br. at 17-18; (2) the SRO failed to correct the IHO's purported shifting of the burden of proof onto Y.S., *id.* at 20; (3) the SRO erred in excluding "allegations related to the IEE," *id.* at 16-17; (4) the SRO erroneously affirmed the IHO's credibility determinations as to certain of the DOE's witnesses, *id.* at 20-22; (5) the SRO erroneously affirmed the IHO's adverse credibility determination as to Y.S., *id.* at 23; (6) the SRO erred in finding no denial of a FAPE between May 16, 2020, and April 2021, *id.* at 23-24; (7) the SRO erred in his recalculation of the appropriate compensatory education due, *id.* at 24-25; (8) the SRO erred in finding claims predating October 2020 and relief concerning bilingual SLT time-barred, *id.* at 19-20; and (9) the SRO erred in failing to award any bilingual SLT, *id.* at 25. With respect to her claims related to bilingual SLT services, Y.S. urges the Court to consider a final decision issued on September 19, 2023, in a separate due process proceeding related to Y.S.'s allegations, that S.F. had been denied a FAPE for the 2022-2023 school year (Case Number 248820). *Id.*; *see also* Dkt. 22-1 ("248820 Final Order"). Y.S.

contends that these reversals entitle S.F. to 600 hours of academic compensatory education and 276 hours of compensatory bilingual SLT services.  Pl. SJ Br. at 14.[10]

Initially, the two procedural challenges raised by Y.S. in the instant action, which concern the SRO's construction of the due process complaint notice and the SRO's purported failure to remedy any improper burden shifting by the IHO, bear directly on multiple of the discrete substantive issues raised by Y.S.  Specifically, Y.S.'s argument that the SRO used restrictive pleading standards in determining which claims were properly before him concern the SRO's determinations that certain of Y.S.'s claims were time-barred as well as the SRO's narrowing of the issues related to the adequacy of the October 2020 IEP.  Pl. SJ Br. at 18.  And Y.S.'s concerns with the SRO's purported failure to remedy any misallocations of the burden of proof by the IHO appear to pertain to the issues of whether S.F. received a FAPE under the October 2020 IEP and whether S.F. was entitled to compensatory bilingual SLT.  *Id.* at 20.  Rather than address the procedural challenges in isolation, the Court thus addresses them together with Y.S.'s substantive challenges, each of which the Court proceeds to consider in turn.

**A.    The SRO's Exclusion of Allegations Related to Y.S.'s Request for IEEs**

As discussed above, *see supra* I.C.2, SRO Krolak concluded that any recourse related to the completion of the requested IEEs should have been raised in connection with the earlier due process proceeding (Case Number 183233), in which the IEEs were ordered.  Dkt. 18-4 at 254.  In arriving at that determination, SRO Krolak construed Y.S.'s claim concerning the DOE's failure to timely transmit the February 2020 IHO decision in that case (as well as other alleged impediments interfering with S.F.'s timely receipt of comprehensive independent evaluations) as

---

[10] It appears that Y.S. no longer seeks an extension of the SRO's two-year deadline for use of the compensatory education award.

a claim for enforcement or review of the February 2020 final decision that thus fell outside the scope of his authority. *Id.* (citing *A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 76, 78 n.13 (2d Cir. 2005) for the proposition that IHOs lack enforcement mechanisms). In her summary judgment motion, Y.S. contends that her claim was properly raised in the administrative proceedings underlying the instant action as "a question of whether [the] DOE met its statutory and regulatory obligations to ensure S.F.'s needs were appropriately evaluated and a program for her was reasonably calculated toward meaningful progress in light of her unique circumstances." Pl. SJ Br. at 16-17. The Court agrees.

By way of background, "[t]he IEE process attempts to level the playing field between parent and government by securing a parent's ability to obtain an independent assessment of their child's disability if the school's falls short. It provides 'parents access to an expert who can evaluate all the materials that the school must make available, and who can give an independent opinion,' and it ensures that parents 'are not left to challenge the government without a realistic opportunity to access the necessary evidence, or without an expert with the firepower to match the opposition.'" *D.S. ex rel. M.S.*, 975 F.3d at 158 (quoting *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 60-61 (2005)). So when a parent disagrees with an evaluation administered by the school district and requests an independent evaluation at public expense, the school district must either "[f]ile a due process complaint to request a hearing to show that its evaluation is appropriate" or "[e]nsure that an [IEE] is provided at public expense." 34 C.F.R. § 300.502(b)(2). Whichever course it takes, the district is required to act "without unnecessary delay." *Id.*

Accordingly, a school district's failure to act timely on a parent's request for an independent evaluation at public expense may constitute a procedural violation of the IDEA. *See, e.g.*, *Taylor v. District of Columbia*, 770 F. Supp. 2d 105, 109-10 (D.D.C. 2011) (agreeing that the

school district's failure to respond to the parent's request for an IEE for more than four months was a procedural violation of the IDEA but remanding on the issue of whether that procedural violation resulted in a substantive violation of the IDEA); *Pajaro Valley Unified Sch. Dist. v. J.S.*, No. C 06-0380 PVT, 2006 WL 3734289, at *3 (N.D. Cal. Dec. 15, 2006) (finding that the school district failed to act "without unnecessary delay" when it waited without explanation for nearly three months after the parent's IEE request to file for a due process hearing to demonstrate that its own evaluation was appropriate). But of course, not every procedural violation results in a deniable of a FAPE. Rather, such violations render an IEP inadequate only where they "(1) impeded the child's right to a FAPE, (2) significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of a FAPE, or (3) caused a deprivation of educational benefits." *S.W. v. New York Dep't of Educ.*, 92 F. Supp. 3d 143, 155 (S.D.N.Y. 2015) (citing *R.E. ex rel. J.E.*, 694 F.3d at 190); *accord* 20 U.S.C. § 1415(f)(3)(E)(ii).

The allegations in the due process complaint track closely the type of claim described above. To start, Y.S. alleged that the DOE's failure to inform her of the IHO's February 2020 Order resulted in delays in scheduling the mandated independent evaluations, including the neuropsychological evaluation by Dr. Hope, who ultimately determined that S.F.'s current academic program inadequately addressed her needs and recommended a number of academic services and accommodations. Dkt. 18-1 at 2-3. Y.S. asserted that these delays, among others, interfered with S.F.'s right to a FAPE and with Y.S.'s right to meaningfully participate in the decision-making process. *Id.* at 4. Y.S. further alleged that the DOE's failure to transmit or otherwise act on the February 2020 Order resulted in delays in scheduling the requested independent SLT, PT, and OT evaluations, and that "[a]s with [S.F.]'s academics, the IEP team remained in the dark as to [S.F.'s] related service needs long after [February 2, 2020], impeding

[S.F.]'s right to a FAPE." *Id.* at 5.  In sum, Y.S. charged the DOE with failing to timely ensure that the requested IEEs were provided at public expense (namely by failing to transmit or otherwise act on the IHO's order for six months), and alleged that this failure rendered S.F.'s IEP inadequate by obscuring Y.S.'s purported needs for certain academic interventions as well as bilingual SLT and PT services.[11]

Nowhere on the face of the due process complaint notice, which Y.S. filed on May 16, 2022, *after* the independent evaluations ordered in the February 2, 2020 Order had already been completed, does Y.S. appear to be seeking enforcement of that order.  Nor does she appear to be taking a *de facto* appeal from that order, which awarded her the relief that she requested.  The Court thus is compelled to reverse the SRO's determination that Y.S.'s allegations regarding the IEEs raised only claims for enforcement or review of the February 2, 2020 Order.

To be clear, however, the Court takes no position on whether the DOE's six-month delay in transmitting or otherwise acting on the February 2, 2020 Order constituted a procedural violation of the IDEA, or, if it did, whether that delay interfered with S.F.'s or Y.S.'s substantive rights under the Act.  The Court remands these issues to the SRO to consider in the first instance.  *Cf. T.L. v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 417, 436 (E.D.N.Y. 2013) ("Remand is appropriate to obtain the necessary educational expertise of the IHO and the SRO."); *F.B. v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 1669 (PAE), 2013 WL 592664, at *15 (S.D.N.Y. Feb. 14, 2013) ("The Court is ill-equipped to address these claims [regarding the substantive adequacy of the student's IEP and the DOE's recommended school placement] in the first instance.  The Court instead remands

---

[11] Given the timeline of events, the delay related to the completion of the IEEs could only have affected the information available to the CSE that convened on October 8, 2020.  The Court thus presumes that this alleged procedural violation bears at most on the adequacy of the October 2020 IEP, as mentioned *infra* III.C.2.b.

them to the SRO to consider, based on the voluminous record created during the administrative process.").

## B.    The IHO's Credibility Determinations

The Court next turns to Y.S.'s challenges to the IHO's credibility assessments of the DOE's witnesses—including the district assistant principal (Ms. Beach), physical therapist (Mr. Shenouda), and speech-language pathologist (Ms. Lattari)—and of Y.S. herself.  Pl. SJ Br. at 20-23.[12]  As the SRO noted, an IHO's credibility determinations are accorded deference "unless non-testimonial, extrinsic evidence in the record would justify a contrary conclusion or unless the record read in its entirety would compel a contrary conclusion."  *Carlisle Area Sch. v. Scott P. ex rel. Bess P.*, 62 F.3d 520, 528 (3d Cir. 1995); *see also J.R. v. Bd. of Educ. of Rye Sch. Dist.*, 345 F. Supp. 2d 386, 399 (S.D.N.Y. 2004) ("[O]n this second level of review of the IHO's decision, we accord the deference, traditional on appellate review, to [the IHO's] assessment of the credibility of those witnesses who testified before him."); *Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist.*, 175 F. Supp. 2d 375, 396 (N.D.N.Y. 2001) (noting that "the IHO has had the benefit of viewing all of the witnesses and judging their credibility").  The Court discerns no basis to disturb the IHO's assessments on the various witnesses' credibility.

First, Y.S. revives her contention that the IHO should have deemed incredible across the board the "witnesses that the DOE's own representative rejected."  Pl. SJ Br. at 20-21.  In her appeal before the SRO, Y.S. argued without elaboration: "Not only are the District Representative's own memorialized findings—which should have deterred DOE from calling the school staff—and S.F.'s records from DOE contrary to the IHO's suggested determination of their

---

[12]  Y.S. also attacks the credibility of Ms. Bursztyn, but as discussed below, the IHO did not make any determinations as to Ms. Bursztyn's credibility.

credibility, but DOE's witnesses themselves provided conflicting evidence and testimony that compelled a determination that they were not credible." Dkt. 18-4 at 186. The SRO found this challenge incomprehensible in large part because Y.S. had not identified the "memorialized findings" purportedly undermining the witnesses' credibility. *Id.* SRO Krolak thus dismissed the challenge outright, explaining that it was not his "role to research and construct the appealing party's arguments or guess what they may have intended," *id.*—a sentiment this Court shares.

In her motion for summary judgment, Y.S., ostensibly attempting to clarify her challenge, contends that portions of the April and June 2021 IEPs "rejecting the DOE's submission and instead accepting the IEE evaluations and reports" constitute "non-testimonial record evidence justifying a contrary conclusion" to the IHO's credibility assessments of the DOE witnesses. Pl. SJ Br. at 20-21. Before neither the SRO nor this Court has Y.S. specified to which DOE witnesses she is referring. Nevertheless, Y.S. appears to be arguing that the April 2021 CSE's decision to craft S.F.'s IEP based on the independent evaluators' recommendations instead of the recommendations made by the Ms. Lattari and Mr. Shenouda somehow renders the testimony of the latter two individuals incredible.[13]

This argument is meritless. As the DOE notes, the only reason the CSE provided in the April and June 2021 IEPs for prioritizing the independent evaluators' recommendations was Y.S.'s insistence. Dkt. 18-1 at 86-87 (portion of the April 2021 IEP discussing S.F.'s speech and language needs); *see also* Deft. SJ & Opp. Br. at 10. Nothing in those documents impugns the credibility of either Ms. Lattari or Mr. Shenouda. Nor does the mere fact that the April 2019 CSE—tasked

---

[13] The April 2019 CSE was comprised of the following people: (1) Y.S., (2) a related service provider/special education teacher, (3) a district representative, (4) a social worker, (5) a counselor, (6) Assistant Principal Beach, (7) a DOE occupational therapist, (8) Ms. Bursztyn, (9) Ms. Lattari, and (10) Mr. Shenouda. Dkt. 18-1 at 111 (attendance page).

with balancing a host of perspectives, including those of Y.S., in collectively developing S.F.'s IEP—declined to adopt these school professionals' recommendations detract from their credibility. They plainly were entitled to form opinions based on their professional experience and direct work with S.F., make recommendations that diverged from those made by the independent evaluators, and to share those opinions and recommendations at the impartial hearing, notwithstanding the CSE's ultimate decision.

To the extent that Y.S. is arguing that the IHO and SRO should have placed greater weight on the opinions of the independent evaluators than on the opinions of the DOE witnesses, that is precisely the type of dispute this Court is ill-equipped to referee. And in light of the IHO's and SRO's well-reasoned and detailed analyses on this front, the Court defers to their determinations on the due weight of the varying opinions. *See M.H. ex rel. P.H.*, 685 F.3d at 240 (explaining that district courts are not to "choose between the views of conflicting experts on controversial issues of educational policy in direct contradiction of the opinions of state administrative officers who [have] heard the same evidence" (brackets, ellipses, and internal quotation marks omitted)).

Y.S.'s more targeted challenges to the credibility of the DOE's witnesses fare no better. As to Ms. Bursztyn, the school psychologist, the SRO determined that the IHO neither made any credibility findings with regard to her testimony nor relied on her testimony in reaching any of his conclusions. Dkt. 18-4 at 261. Y.S. does not challenge this determination. Instead, she repeats her unsubstantiated accusation that Ms. Bursztyn distorted S.F.'s psychological update "in anticipation of litigation." *See* Pl. SJ Br. at 22 ("Ms. Bursztyn's several antics included referring to comparison of a rejected evaluation and its replacement as showing 'progress', and following receipt of the IEE neuropsychological and [bilingual ]SLT reports, creating narrative 'updates' attacking the IEEs in anticipation of litigation."). And Y.S. proclaims that it is "concerning" that

the SRO "cites to the [school psychologist's] comments in the April 2021 IEP for support."  *Id.* at 21-22.  Y.S. does not specify which comments the SRO purportedly cited, in what manner the SRO relied on these unidentified comments, or how this issue at all relates to her requested relief. The Court declines to address Y.S.'s incoherent commentary.

As to Ms. Lattari, the DOE speech-language pathologist, Y.S. accused, before the SRO, this witness of "attempting occasional, minimal Spanish speech inquires and instruction at least a year prior to having any certification to do so," and argued that Ms. Lattari thus was not credible. *See* Dkt. 18-4 at 148 (notice of request for review).  At the impartial hearing, Ms. Lattari, who obtained her bilingual education extension on May 5, 2021, testified that she provided S.F. with speech-language therapy in English beginning in 2018 and through April 2021.  Dkt. 18-3 at 65 (IHO hearing transcript).  She further testified that she engaged with S.F. in Spanish "probably once throughout each session" only if she thought S.F. did not understand something.  *Id* at 66-67. Examining this testimony, the SRO concluded that Y.S.'s accusation "was not supported by the weight of the evidence."  Dkt. 18-4 at 262.

In just one sentence of argument, Y.S. challenges this determination, seemingly urging this Court to accept blindly that Ms. Lattari's singular use of Spanish each session constituted an improper attempt at bilingual speech-language instruction.  *See* Pl SJ Br. at 22 ("Next, the SRO cites and somewhat quotes the speech pathologist's 'not "very frequent"' Spanish inquiries and absence of certification during her work with S.F., to claim the *absence of support* for the contention that she 'was attempting occasional, minimal Speech inquiries and instruction at least one year prior to having the proper certification to do so.'").  The Court declines that invitation. And more relevant to the issue at hand, the Court further declines to make the extraordinary leap that Ms. Lattari's minimal use of Spanish with S.F. compels the conclusion that she was an

unreliable witness. To the extent that Y.S. is arguing that the pathologist's testimony is internally inconsistent, the Court fails to see how Ms. Lattari's acknowledgment of her rare use of Spanish with S.F. undermines her testimony that she provided speech-language therapy in English. Both can be true.

Y.S. next asserts that S.F.'s SANDI scores were inflated and that the assessments should never have been used in the first place. *Id.* The Court presumes that Y.S., in making these stray statements, seeks to challenge the IHO's reliance on Assistance Principal Beach's testimony regarding S.F.'s academic progress and the SRO's affirmance of the same. *See* Dkt. 18-4 at 262. But as with her challenge before SRO Krolak, Y.S. still has not explained in what manner the assistant principal was responsible for any purported inflation of those assessments. *See id.* (SRO Krolak discussing record evidence that the assistant principal neither administered the SANDI assessments nor inputted the scores). Moreover, to the extent that Y.S. continues to argue that S.F.'s SANDI scores cannot alone support Assistant Principal Beach's testimony that S.F. was progressing academically, the record confirms that, in evaluating S.F.'s progress, she reviewed a number of other assessments that were administered to S.F., including the Fountas & Pinnell Running Record, the Literacy Foundation Skills Continuum, and the Math Foundation Skills Continuum. *See* Dkt. 18-3 at 176-180; *see also id.* at 180 (Assistant Principal Beach testifying that her staff "saw that [S.F.'s] scores were increasing in various assessments," that "her language skills were growing and her participation was growing," and that S.F.'s "classroom teacher . . . described [S.F.] as the best performing academically in her class"). The evidentiary record thus does not compel reversal of the IHO's credibility determination for Ms. Beach.

As to Mr. Shenouda, the school physical therapist, who testified inconsistently as to timeframe he provided PT services to S.F., Y.S. argues that the SRO "created an argument for

DOE that such discrepancies were explainable by 'confusion, mistake, or lapse in memory,'" "instead of applying any standard of review." Pl. SJ BR. at 22. Y.S.'s undeveloped, cryptic charges, which fall far short of demonstrating that the IHO's credibility assessment went against the weight of the record, once again fail to persuade.

Lastly, Y.S. contests the IHO's determination that she herself was not credible. *Id.* at 23. As discussed above, *see supra* I.C.1, the IHO found problematic Y.S.'s claim in her sworn affidavit that S.F. was receiving only sixty minutes of PT per week between April 2021 and December 2021, given that the mandate of weekly ninety minutes of PT was adopted at the June 2021 CSE meeting, which Y.S. had attended. Dkt. 18-4 at 106-107. He explained that "[t]his fact calls [Y.S.]'s credibility into question to the extent that [Y.S.] requested relief based upon facts which she almost certainly knew not to be true." *Id.* at 106. The SRO, conducting an independent review, concluded that Y.S.'s testimony "was not consistent with the documentary evidence in the hearing record or the testimony of the physical therapist." *Id.* at 264. While he thus determined that there was no basis to depart from the IHO's determination specifically as to Y.S.'s request for compensatory PT, he clarified that the IHO's finding should not be extrapolated out to the Y.S.'s other requests. *Id.* at 266.

Y.S. argues that the "SRO entirely ignore[d] the March 2021 IEE PT report," "ignore[d] the IHO's inconsistency in inferring that Y.S. and DOE's therapist conversed but only as a means to support positions against Y.S.," "h[eld] against Y.S.'s credibility that she was not more specific in stating" that she believed that the DOE's PT continued with the twice weekly session (presumably after the June 2021 IEP), and thus "pushed the burden onto [Y.S.] instead of holding DOE to its burden to provide . . . attendance records or other session notes." Pl. SJ Br. at 28. The Court struggles to discern the import of this string of sentences, none of which seems to refute the

SRO's and IHO's determinations that Y.S.'s testimony was inconsistent with other record evidence.

In any case, although the SRO declined to overturn the IHO's credibility assessment related to Y.S.'s request for compensatory PT, the SRO nevertheless found that the DOE failed to meet its burden of proving that S.F. received the PT services from May 4, 2021, to December 31, 2021, and based on that finding, ultimately awarded the full 15.5 hours of compensatory PT services that Y.S. had requested. Dkt. 18-4 at 277-278. Y.S. does not seek review of that portion of the SRO's decision. *See* Pl. SJ Br. at 16 (urging that the SRO correctly reversed the IHO as to this compensatory PT award). Accordingly, any challenge to the SRO's narrow affirmance of the IHO's credibility assessment, which pertains only to that award, is moot.

## C.    The SRO's Finding of No Actionable FAPE Denials Between May 16, 2020, and April 2021

Next, the Court considers the SRO's determination that the DOE provided S.F. a FAPE from May 16, 2020, through April 2021.

### 1.    May 16, 2020, to October 8, 2020

As to the period between May 16, 2020, and October 8, 2020, Y.S.'s claim is predicated on the DOE's failure to have an IEP in place at all for S.F. *See* Dkt. 18-1 at 2 (due process complaint notice). There is no dispute that after S.F.'s April 2018 IEP expired on April 25, 2019, the DOE had failed to develop a new IEP for S.F. until October 8, 2020. *See* Pl. 56.1 Stmt. ¶ 20; Deft. 56.1 Counter Stmt. ¶ 20 (the DOE admitting "that the April 25, 2018 IEP was the most current IEP as of May 16, 2020"). The SRO determined that any claims concerning this period were barred by the IDEA's two-year statute of limitations, however, reasoning that any claim related to the DOE's failure to develop a new IEP accrued on or around April 25, 2019. Dkt. 18-4 at 256; *see also* 20 U.S.C. § 1415(f)(3)(C) (requiring parents to request an impartial due process

hearing "within 2 years of the date the parent . . . knew or should have known about the alleged action that forms the basis of the complaint"); N.Y. Educ. Law § 4404(1)(a).

Y.S. counters that each day that S.F. went without an IEP in place between May 16, 2020, through October 8, 2020, a discrete and actionable offense under the IDEA arose. *See* Pl. SJ Br. at 19. In so arguing, Y.S. disclaims any attempt to sweep her untimely claims (those accruing between April 25, 2019, and May 16, 2020) into a single "continuing violation" reaching into the limitations period (from May 16, 2020, onwards). Pl. Opp. & Reply at 13.[14] But even accepting that Y.S.'s theory of harm relies on discrete IDEA violations arising daily between May and October 2020, at best, Y.S. still has alleged only bare procedural violations that, once again, do not automatically compel a finding of a FAPE denial. *See also T.K. v. N.Y.C. Dep't of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016) ("Not every violation of these procedural safeguards rises to the level of the denial of a FAPE.").

On this ground, among others, *Scaggs v. New York City Department of Education*, No. 06 Civ. 799 (JFB), 2007 WL 1456221, (E.D.N.Y. May 16, 2007), on which Y.S. relies, Pl. SJ Opp. & Reply Br. at 14, is distinguishable.[15] There, the Court found "discrete, actionable offenses," where the plaintiffs, a group of students at a charter school, alleged not only that a failure to prepare and to provide IEPs but also that the education environment was completely inadequate due to "a

---

[14] Indeed, "judges in this Circuit have generally been unreceptive to the argument that the 'continuing violation' doctrine applies in the IDEA context." *N.J. v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 6173 (JMF), 2021 WL 965323, at *12 n.13 (S.D.N.Y. Mar. 15, 2021) (collecting cases).

[15] In *Scaggs*, the plaintiffs withdrew their IDEA claim by stipulation, and so the Court was principally considering whether the plaintiffs had sufficiently stated claims under the Americans with Disabilities Act, the Rehabilitation Act, 42 U.S.C. § 1981, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 1983, and state law. 2007 WL 1456221, at *8-11. Moreover, the IDEA claim initially brought by the plaintiffs there involved systemic violations arising from inadequate educational programs and facilities, which the Second Circuit "has consistently distinguished . . . from technical questions of how to define and treat individual students' learning disabilities." *Id.* at *6, 7.

total lack of programs designed to address the needs of disabled students [and] . . . a total absence of basic services and supplies." *Scaggs*, 2007 WL 1456221, at *8, 10; *see also id.* at *10 ("[T]he alleged failure to prepare and to provide IEPs, *as well as other requisite educational services* . . . are discrete, actionable offenses that are not time-barred." (emphasis added)); *cf. S.J.B. ex rel. Berkhout v. N.Y.C. Dep't of Educ.*, No. 03 Civ. 6653 (NRB), 2004 WL 1586500, at *8 (S.D.N.Y. July 14, 2004) (explaining that "the plaintiffs ha[d] separate claims for each IEP that the DOE *failed to implement* after receiving orders from an IHO" (emphasis added)).

By contrast, nowhere in the due process complaint notice does Y.S. complain of the special education services that S.F. was receiving, or otherwise explain how, in light of the provision of these services, Y.S. was denied a FAPE during this period. *See generally* Dkt. 18-1 at 1-8. Nor would such claims, which would have accrued on April 29, 2020, in any event, be timely. *See* 20 U.S.C. § 1415(f)(3)(C). And to the extent that Y.S. is arguing that the DOE's failure to have an IEP in place for S.F. during a period in which she was incontrovertibly receiving special education services constituted a *per se* denial of a FAPE, the Court readily rejects that argument. *Cf. C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 69 (3d Cir. 2010) ("While we do not sanction a school district's failure to provide an IEP for even a *de minimis* period, we decline to hold as a matter of law that any specific period of time without an IEP is a denial of a FAPE in the absence of specific evidence of an educational deprivation."). The Court thus upholds the SRO's determination that Y.S.'s claims related to the absence of an IEP between May 16, 2020, and October 8, 2020, are time-barred.

### 2.  October 8, 2020, to April 19, 2021

For the period between October 8, 2020, and April 19, 2021, Y.S.'s claim is premised on the alleged inadequacy of the October 2020 IEP. Before addressing the merits of Y.S.'s claim, the Court reviews the SRO's threshold determination as to the scope of this claim.

### a.   Scope of Issues Related to the October 2020 IEP

SRO Krolak culled at the outset a number of claims related to the October 2020 IEP that Y.S. raised in her appeal.  Dkt. 18-4 at 266-267.  Y.S. sought to argue before the SRO that the October 2020 IEP: "(1) 'changed placement in the incorrect direction'; (2) too-belatedly added the 12-month program; (3) removed the 'limited English proficiency' notice; (4) reflected a need for assistive technology without mandating any device/service; (5) removed necessary PT; (6) added counseling and parent counseling and training; (7) divided monolingual speech-language therapy into separate group sizes and did not recommend the necessary bilingual speech-language therapy or note the recommendation from any of the parent's IEEs; and (8) added a read-aloud test accommodation without addressing research-based methodology."  *Id.* at 266.  But SRO Krolak determined that Y.S. failed to raise allegations related to the change in placement, the twelve-month program, removal of the "limited English proficiency" notice, counseling and parent counseling and training, speech-language therapy, and a read-aloud accommodation, and so concluded that those claims were not properly before him.  *Id.* at 266-267.  He also declined to address the challenge related to the need for assistive technology in the October 2020 IEP, given that the DOE explained that selection of that checkbox was a "clerical error," none of S.F.'s other IEPs indicated such a need, and Y.S. was not seeking any relief related to that need.  *Id.* at 267.  Finally, the SRO noted that while the due process complaint raised allegations concerning the October 2020 IEP's failure to recommend a paraprofessional for S.F., Y.S. declined to pursue that claim in her appeal before the SRO.  *Id.*  Accordingly, the SRO determined that only two issues

related to the October 2020 IEP were properly before him: the alleged lack of notice of the CSE meeting and the failure to recommend PT services. *Id.*[16]

Y.S. perfunctorily argues before this Court that the SRO applied impermissibly restrictive pleading standards in construing the due process complaint notice, and that "as to the October 2020 IEP, it suffices that the [due process complaint notice] as a whole . . . specified S.F.'s educational and related service needs and indicated that S.F. had the same needs that should have been realized and satisfied across the time period at issue." Pl. SJ Br. at 17-18. But that is not the law.

Under the IDEA, "parents must state all of the alleged deficiencies in the IEP in their initial due process complaint." *R.E. ex rel. J.E.*, 694 F.3d at 187 n.4. This requirement is necessary to give effect to the statutory thirty-day resolution period once a due process complaint is filed, which offers the school district an opportunity to remedy any identified deficiencies without penalty. *Id.* at 187-88; 20 U.S.C. § 1415(f)(1)(B)(ii). It is true the IDEA "contemplates some flexibility" and "does not require that alleged deficiencies be detailed in any formulaic manner." *C.F. ex rel. R.F.*, 746 F.3d at 78 (citing 20 U.S.C. § 1415(b)(7)(A)(ii)). But the school district cannot resolve problems of which it is unaware. Accordingly, the "key to the due process procedures is fair notice and preventing parents from 'sandbag[ging] the school district' by raising claims after the expiration of the resolution period." *Id.* (quoting *R.E. ex rel. J.E.*, 694 F.3d at 187 n.4) (alteration in original). Consistent with these principles, the IDEA expressly provides that "[t]he party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the [due process complaint], unless the other party agrees otherwise." 20

---

[16] In her motion before this Court, Y.S. does not appear to challenge the SRO's determination that although Y.S. had demonstrated insufficient notice as to the October 2020 CSE meeting, Y.S. "ha[d] not requested any relief that is attributable to a denial of FAPE due to lack of parent participation," Dkt. 18-4 at 268. *See generally* Pl. SJ Br.

U.S.C. § 1415(f)(3)(B).  And courts in this Circuit, in turn, "have held that issues not raised in due process complaints are foreclosed from review in federal court, absent agreement from the opposing party." *C.F. ex rel. R.F.*, 746 F.3d at 78 (collecting cases).

Here, the due process complaint listed four specific substantive deficiencies in the October 2020 IEP, conveniently under the caption, "The DOE's October 8, 2020 IEP failed to mandate an appropriate program": (1) it affirmatively indicated that S.F. needed assistive technology but failed to mandate an appropriate device; (2) it failed to mandate "any research-based methodology for students with autism and language disorders"; (3) it failed to mandate any PT; and (4) it failed to mandate a paraprofessional.  Dkt. 18-1 at 5-6.  Contrary to Y.S.'s suggestion, the DOE was under no obligation to divine any other deficiencies in the October 2020 IEP from the due process complaint's sprawling descriptions of the independent evaluators' recommendations, unsupported accusations that the DOE sought to distort the results of these independent evaluations, and broad references to S.F.'s "needs" that were purportedly left unaddressed in the various IEPs at issue across three different school years.  Only two of the issues specified in the due process complaint (assistive technology and PT services) were raised in Y.S.'s appeal to the SRO, *see* Dkt. 18-4 at 143-153 (notice of request for review), and Y.S. does not challenge the SRO's excision of her assistive technology claim.  Accordingly, the SRO did not err in finding that the only allegation concerning the substantive adequacy of the October 2020 IEP concerned the absence of PT services.

### b.  Adequacy of October 2020 IEP

In finding that the absence of PT services in the October 2020 IEP did not result in a denial of a FAPE, the SRO considered thoroughly the information underpinning the October 2020 CSE's decision.  This information entailed the various tests measuring S.F.'s motor function (including the Gross Motor Function Classification System, the School Function Assessment, the Timed Up

& Down Stairs test, the 30 Second Walk Test, the Pediatric Balance Scale, the "finger to nose test," and cross-crawls activity), observations of S.F. while at school, S.F.'s April 2019 PT evaluation, and input from the district physical therapist describing S.F. as "high functioning" and agreeing with the recommendation from the April 2019 PT evaluation that S.F. no longer needed PT services. *Id.* at 269-270. Upon review of that information, the SRO concluded that "the October 2020 CSE's decision to discontinue PT services was substantiated by the evaluative information regarding the student *available at the time* of the October 2020 CSE meeting." *Id.* at 271 (emphasis added).

The SRO's well-reasoned, detailed decision on this score warrants substantial deference. But his analysis may be affected by the Court's determination above concerning Y.S.'s claim that the DOE untimely complied with her IEE requests. *See supra* III.A. Of note, the independent PT evaluation, which was not completed until February 2021, recommended that S.F. receive ninety minutes of PT services per week. *See* Dkt. 18-1 at 191. And Y.S. specifically argued in her due process complaint notice that the untimely completion of this independent PT evaluation, among others, interfered with S.F.'s right to a FAPE. *Id.* at 5. Accordingly, the Court remands the issue of whether the October 2020 IEP's exclusion of PT services denied S.F. a FAPE so that the SRO may consider the issue, as necessary, in conjunction with Y.S.'s claim that the DOE's failure to ensure the completion of the requested IEEs impeded S.F.'s right to a FAPE.[17]

---

[17] Notably, the IHO, in considering Y.S.'s claims on the inadequacy of her April 2021 and June 2021 IEPs, reviewed the independent PT evaluation report and other record evidence and nevertheless concluded that Y.S. failed to demonstrate the need for PT services. Dkt. 18-4 at 117. Because the SRO found the denial of a FAPE for the period between May 4, 2021, and December 31, 2021, on *implementation*, rather than *adequacy* grounds, the SRO did not reach the issue of whether the independent evaluation, considered in totality with other record evidence, entitled S.F. to PT services. *See id.* at 271.

**D.      The IHO's and SRO's Determinations as to S.F.'s Entitlement to Bilingual Speech-Language Therapy Services for the 2018-2019 and 2019-2020 School Years**

The Court turns next to the question of whether S.F. was entitled to bilingual SLT services for the 2018-2019 and 2019-2020 school years. The IHO concluded that the exclusion of such services (as to the 2019-2020 school year) did not constitute a denial of FAPE, and additionally commented that the claims were questionably time-barred. Dkt. 18-4 at 110-111. The SRO expressly determined that the claims were time-barred and declined to consider their merits. *Id.* at 257-258. As the parties' instant briefing implicates both determinations, the Court considers each.

**1.      Application of the Statute of Limitations**

In her motion for summary judgment, Y.S. argues that the "SRO's chosen April 29, 2020 date of accrual was incorrect" and further that, in any event, the "date is inconsequential in light of COVID-19 tolling," presumably in reference to New York State Executive Order 202.67. Pl. SJ Br. at 19. The Court considers each argument in turn.

The SRO determined that Y.S.'s claims concerning bilingual SLT accrued as of April 29, 2020, at the latest because it was plain from the face of the remote learning plan that S.F. was not receiving bilingual SLT services. Dkt. 18-4 at 258. It is not entirely clear on what ground Y.S. challenges this accrual date.[18] But to the extent Y.S. is arguing that the more appropriate accrual

_____

[18] The only argument in Y.S.'s motion concerning the accuracy of the accrual date appears to be the following:

> It is also beyond dispute that the IEE's intent, including the [bilingual ]SLT and recommendation contained therein, was to develop a 2020-21 IEP, not to bestow upon Y.S. retroactive knowledge of a need for compensatory [bilingual ]SLT that would disappear absent a [due process complaint] filed the same day that she received the IEE report. Even the IHO was skeptical of DOE, finding the latest date of knowledge was when Y.S. received the [bilingual ]SLT report, less than two years before she filed the DPC.

date was on or around September 2020 (when Y.S. received the report from S.F.'s bilingual speech and language evaluation recommending bilingual SLT services), placing her comfortably within the IDEA's two-year statute of limitations, her own sworn affidavit precludes such a conclusion. Indeed, Y.S. asserted that the September 2020 bilingual speech-language evaluation "confirm[ed] what [she] already knew—that S.F. should have been having bilingual Spanish-English SLT." Dkt. 18-2 at 13 ¶ 11. The record evidence thus confirms that Y.S. had reason to believe that S.F. needed bilingual SLT services *before* September 2020, and that she knew that S.F. was not receiving such services by April 29, 2020. Absent any other challenges from Y.S. on this point, the Court sees no basis to disturb the SRO's finding that Y.S.'s claim for bilingual SLT services accrued no later than April 29, 2020.

Y.S. argues that the SRO's chosen accrual date does not in any case matter because of "COVID-19 tolling," and thus Y.S. maintains she could have included in her May 16, 2020 due process complaint any claim that accrued as far back as September 30, 2019. Pl. SJ Br. at 19. The DOE counters that Y.S. waived this argument for her failure to "raise [it] at the administrative level." Deft. SJ & Opp. Br. at 19. Y.S. retorts that she raised COVID-19 tolling in a footnote in her closing brief before the IHO. Pl. Opp & Reply Br. at 12; *see also* Dkt. 18-4 at 52 & n.9 (Y.S's closing brief before the IHO).

Setting aside the issue of waiver, Y.S.'s tolling argument fails. Issued on October 4, 2020, New York State Executive Order 202.67 "was the culmination of a series of executive orders issued by Governor Cuomo during the COVID-19 pandemic." *Romero v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 21 Civ. 4951 (LJL), 2022 WL 624451, at *5 (S.D.N.Y. Mar.

---

Pl. SJ Br. at 20 (footnote omitted).

2, 2022); *see* N.Y. Gov. Exec. Order Nos. 202.8, 202.14, 202.28, 202.38, 202.67 (2020).  That Executive Order continued "[t]he suspension . . . that tolled any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding as prescribed by the *procedural laws of the state* . . . until November 3, 2020."  N.Y. Exec. Order No. 202.67 (emphasis added).  By their terms, these various statute executive orders had no effect on the statutes of limitations prescribed by federal law.  *See Everett v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 7043 (JPC), 2022 WL 2342693, at *5 (S.D.N.Y. June 29, 2022) ("While this Executive Order tolled the 'procedural laws' of New York, it did not apply to [the plaintiff]'s Title VII claim: New York's 'various executive orders issued throughout the COVID-19 pandemic did not purport to toll time periods prescribed by federal law and they were not justified by any limitation of access to the federal courts.'" (quoting *Romero*, 2022 WL 624451, at *5)); *Jamieson v. U.S. Postal Serv.*, No. 20 Civ. 6184 (NGG), 2022 WL 43767, at *2 (E.D.N.Y. Jan. 5, 2022) (noting that former Governor Cuomo's executive order could not toll federal claims).  As the two-year statute of limitations applied to Y.S.'s claims arises from the IDEA itself, *see* 20 U.S.C. § 1415(f)(3)(C), and not from New York procedural law, "COVID-19 tolling" does not apply.

Accordingly, the Court upholds the SRO's determination that Y.S.'s claims related to any request for bilingual SLT services are time-barred.

### 2.  Need for Bilingual SLT

In the alternative, the Court sustains the IHO's determination that the exclusion of bilingual SLT services did not result in the denial of a FAPE.  *See C.F. ex rel. R.F.*, 746 F.3d at 77 (instructing courts to "defer to the IHO's analysis when considering an issue not reached by the SRO").

The IHO thoroughly considered the relevant documentary and testimonial evidence, including the reports created by the district's speech pathologist and the independent speech and

language evaluation report.  Dkt. 18-4 at 107-108.  In evaluating these conflicting reports, the IHO noted that the speech pathologists who jointly conducted the independent evaluation had not worked with S.F. beyond the single assessment conducted on September 28, 2020, whereas the district speech pathologist had been S.F.'s speech teacher for three years from 2018 to 2021.  *Id.* He further observed that Y.S.'s own witness sought to justify S.F.'s need for bilingual SLT to develop S.F.'s "desire and motivation" to continue speaking Spanish at home—which aim, according to IHO, was "emphatically not the purpose of school based SLT."  *Id.* at 109.  In finding that S.F. was not entitled to bilingual SLT services, the IHO did not shift the burden of proof onto Y.S., as she appears to argue, *see* Pl SJ Br. at 20; rather, he critically assessed the evidence submitted by both parties and assigned significant weight to the speech pathologist who had actually worked with S.F. extensively.

While Y.S. urges this Court both to reweigh the conflicting professional opinions and to weigh in on whether increasing a student's fluency in a second language for use at home sufficiently necessitates the inclusion of bilingual SLT services in S.F.'s IEP, these are precisely the types of issues that demand deference to the expertise of the administrative officers.  Indeed, as discussed, *see supra* II, this Court may not "choose between the views of conflicting experts on controversial issues of educational policy in direct contradiction of the opinions of state administrative officers who [have] heard the same evidence," *M.H. ex rel. P.H.*, 685 F.3d at 240 (brackets, ellipses, and internal quotation marks omitted), or "'substitute [its] own notions of sound educational policy for those of the school authorities [it] review[s],'" *A.C. ex rel. M.C.*, 553 F.3d at 171 (internal quotation marks omitted).  Upon an independent review of the record, the Court discerns no basis compelling departure from the IHO's conclusion, and so upholds, in the

alternative, the determination that the exclusion of bilingual SLT services did not result in a denial of a FAPE.[19]

### E.    The SRO's Compensatory Tutoring Award for May 4, 2021, to December 31, 2021

Lastly, the Court turns to the SRO's award of 150 hours of compensatory tutoring for the denial of a FAPE for the period of May 4, 2021, to December 31, 2021.

"'Compensatory education' is prospective equitable relief, requiring a school district to fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education." *Somoza v. N.Y.C. Dep't of Educ.*, 538 F.3d 106, 109 n.2 (2d Cir. 2008). Because it "aims to make up for educational services the child should have received in the first place," *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 659 (2d Cir. 2020), compensatory education "must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied," *E. Lyme Bd. of Educ.*, 790 F.3d at 457 (internal quotation marks omitted).

In arriving at the 150-hour compensatory tutoring award, the SRO considered a broad array of datapoints to assess the progress S.F. made in her educational program. Dkt. 18-4 at 272-278.

---

[19] The Court's consideration of the final decision in Case Number 248820, in which the IHO concluded that S.F. was entitled to reimbursement for bilingual SLT services while she attended her private placement for the 2022-2023 school year, does not alter this Court's determination. To be sure, the IHO's determination there that S.F.'s increasing dominance in English did not justify the reduction of S.F.'s bilingual SLT services is in some tension with IHO Forbes's consideration of S.F.'s English dominance. *Compare* 248820 Final Order at 4, *with* Dkt. 18-4 at 117-118. But those proceedings involved a different IEP and a different point in S.F.'s academic, mental, and social development, and so have no relevance here. *Cf. M.C. ex rel Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 67 (2d Cir. 2000) (explaining that each IEP is created annually and "is to be judged on its own terms"); *J.R. v. N.Y.C. Dep't of Educ.*, 748 F. App'x 382, 386 (2d Cir. 2008) ("Whether the DOE offered [the student] an appropriate placement in other years makes no difference to the question of whether the IEP provided a FAPE in [the year at issue]." (internal quotation marks omitted)). And in Case Number 248820, the DOE conceded the inadequacy of S.F.'s June 2022 IEP, which removed the bilingual SLT services without any explanation and without an updated speech evaluation. *See* 248820 Final Order at 4.

For instance, the SRO considered results from various academic assessments of S.F. as well as observations from S.F.'s teachers, as memorialized in the April 2021 IEP, indicating that S.F. had progressed in reading, writing, and math.  *Id.* at 273, 276-278.  The SRO also considered the upward trend from Fall 2020 to Fall 2021 in S.F.'s SANDI scores, descriptions of S.F.'s current work and academic abilities in her June 2022 IEP, and testimony from Dr. Levy on S.F.'s then-current levels of academic performance.  *Id.* at 276-278.

The SRO noted both the scarcity of the evidence in the record regarding S.F.'s progress specifically during the period from May 2021 through December 2021 and the absence of justification for granting Y.S.'s request for 600 hours of compensatory tutoring, which request was neither tailored to that period—in fact, Dr. Levy failed to specify a period in which she believed that S.F. had been denied a FAPE—nor otherwise substantiated.  *Id.* at 277.  Nevertheless, the SRO maintained that the IHO erred in failing to award any compensatory tutoring under these circumstances and awarded 150 hours of one-on-one instruction by a special education teacher. *Id.*  The SRO's well-reasoned and thoughtful approach to crafting an equitable remedy from a limited record warrants substantial deference, and the record in totality does not compel a contrary determination.  *See M.H. ex rel. P.H.*, 685 F.3d at 246.

Nor does Y.S. offer a viable alternative.  In her motion, Y.S. contends that the SRO erred in declining to award the full 600 hours recommended by Dr. Levy.  Pl. SJ Br. at 24.  She criticizes the SRO for relying on "inflated SANDI numbers from long before the IEP" and for "leaning into DOE's witnesses . . . instead of the IEE evaluators"—again asking this Court to interject on matters directly implicating the SRO's expertise in the field of education, to choose between conflicting experts, and to opine on appropriate educational methodologies—and urges this Court to accept Dr. Levy's recommendation.  *Id.*  But critically, Y.S. does not address Dr. Levy's failure

to specify what period S.F. had been denied a FAPE—the necessary starting point for determining the scope of S.F.'s entitlement to compensatory education, the very purpose of which is to *remedy a FAPE denial*. The Court declines to issue an award for compensatory education wholly untethered from a correlative FAPE denial.[20]

## IV. Conclusion

For the foregoing reasons, the Court grants summary judgment in favor of Y.S. with regard to the SRO's exclusion of allegations concerning her request for independent educational evaluations and denies summary judgment to both parties on the issue of whether the October 2020 IEP, in failing to provide physical therapy services, denied S.F. a free and appropriate public education. In all other respects, the Court grants the DOE's motion for summary judgment and denies Y.S.'s motion for summary judgment. The Court remands this matter to the SRO to consider Y.S.'s claim regarding whether the DOE timely acted on Y.S.'s request for independent educational evaluations and, only to the extent required by any determination on that issue, to consider the adequacy of the October 2020 IEP with respect to its failure to include a mandate for physical therapy services. Within fourteen days of the issuance of this Opinion and Order, the parties shall file a joint submission providing their views on the next steps in this litigation. The Clerk of Court is respectfully directed to terminate the motions pending at Docket Numbers 20 and 25.

SO ORDERED.

Dated: September 30, 2024
New York, New York

_____
JOHN P. CRONAN
United States District Judge

---

[20] Moreover, as Y.S.'s request for 600 hours of compensatory tutoring arose in connection with her claim that S.F. was denied a FAPE from May 16, 2020, through December 31, 2021, the Court, of course, cannot award that *same* award for a FAPE denial between May 4, 2021, and December 31, 2021.